IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| GAIL GREEN LICENSING & DESIGN LIMITED, and GAIL GREEN, | ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | No. 05 C 5303 |
| ACCORD, INC., et al., | ) ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

AMY J. ST. EVE, District Court Judge:

Plaintiffs Gail Green Licensing & Design Limited ("GGLDL") and Gail Green,

individually, bring the present three-count Amended Complaint against multiple defendants

alleging copyright infringement under Count I.  In Count II, Plaintiffs allege both false

association and false advertising under the Lanham Trademark Act.  In Count III, Plaintiffs bring

a common law breach of contract claim.  Defendants Cecelia Stein Sternberg ("Sternberg"),

Accord, Inc. ("Accord"), the Yankee Candle Company ("Yankee Candle"), International

Concept Entertainment Group ("ICE Group"), and Buyseasons, Inc. ("Buyseasons") move to

dismiss Counts II and III of Plaintiffs' Amended Complaint pursuant to Federal Rule of Civil

Procedure 12(b)(6).  For the following reasons, the Court grants in part and denies in part

Defendants' motion.

## LEGAL STANDARDS

The purpose of a motion to dismiss pursuant to Rule 12(b)(6) is to test the legal

sufficiency of a complaint, not the factual sufficiency.  *Szabo v. Bridgeport Mach., Inc*., 249 F.3d

672, 675-76 (7th Cir. 2001); *see also Cler v. Illinois Educ. Ass'n,* 423 F.3d 726, 729 (7th Cir.

2005) (motion to dismiss challenges complaint's sufficiency). The Court will only grant a motion to dismiss if "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Centers v. Mortgage, Inc.*, 398 F.3d 930, 933 (7th Cir. 2005) (quoting *Conley v. Gibson*, 355 U.S. 41, 45-46, 78 S. Ct. 99, 102, 2 L. Ed.2d 80 (1957)). The Court must assume the truth of the facts alleged in the pleadings, construe the allegations liberally, and view them in the light most favorable to the plaintiff. *Centers,* 398 F.3d at 333.

Under the liberal federal notice pleading standards, a complaint need only include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed.R.Civ.P. 8(a)(2). This statement must "give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Conley*, 355 U.S. at 47.

## BACKGROUND

GGLDL, an Illinois corporation with its principal place of business in Lake County, Illinois, is engaged in the business of developing, acquiring, selling, licensing, and arranging the manufacture, distribution, marketing, and sale of a variety of copyrighted creative works and two and three-dimensional commercial products using copyrighted creative works. (R. 75-1; Am. Compl. ¶¶ 1, 2.) Plaintiff Green – a professionally trained artist, designer, and illustrator – creates and markets original, copyrighted illustrations, designs, drawings, and other artwork for sale or license in the United States and abroad. (*Id.* ¶ 4.) The creative works at issue include "six separate, original sets of unpublished Works, including but not limited to the individual images, characters and combinations of images, characters and words." (*Id.* ¶ 40.)

Defendant Sternberg is the owner and director of numerous business entities controlled

by Accord, Pet Frenzy, and Compass Marketing. (*Id.* ¶¶ 7, 8.) GGLDL alleges that Accord, Sternberg, and various Sternberg businesses are involved in the production, marketing, and sales of products such as clothing and accessories for pets. (*Id.* ¶ 9.) Buyseasons is a Wisconsin corporation that purchases, distributes, and resells clothing and accessories for pets. (*Id.* ¶¶ 12, 13.) Yankee Candle is a Massachusetts company that purchases distributes, and resells clothing and accessories for pets. (*Id*. ¶¶ 20, 21). ICE Group, a Nevada company, is in the business of purchasing, distributing, and reselling clothing and accessories for pets. (*Id.* ¶¶ 28, 29.)

GGLDL alleges that in March of 2002, Sternberg sought to inspect and copy for consideration a number of GGLDL's unpublished works. (*Id.* ¶ 42.) Before providing the material to Sternberg, GGLDL, Sternberg, and Compass Marketing, the predecessor to Accord, entered into a Non-Disclosure and Confidentiality Agreement. (*Id.* ¶¶ 42, 64.) GGLDL then provided Sternberg with originals or copies of the works at issue, but Sternberg did not purchase or license these works from GGLDL. (*Id.* ¶¶ 44-46, 65.) In 2005, Plaintiffs discovered that Accord was allegedly copying, using, producing, distributing, and selling these unpublished works without authorization. (*Id.* ¶ 48.)

## ANALYSIS

### I. Lanham Trademark Act Claim - Count II

The Lanham Act established a federal cause of action for trademark infringement in order to protect consumer confidence in the quality and source of goods and businesses' goodwill in their products. *CAE, Inc. v. Clean Air Eng'g, Inc.,* 267 F.3d 660, 672 (7th Cir. 2001). "Trademark law is designed to reduce the costs customers incur in learning who makes the product, and this also helps sellers obtain rewards from producing goods of consistent quality,

for consumers will find it easier to find and buy goods with which they have been satisfied in the past." *Bretford Mfg., Inc. v. Smith Sys. Mfg. Corp.*, 419 F.3d 576, 579 (7th Cir. 2005). The Lanham Act protects trademarks from interference by state legislation, prevents unfair competition, and protects against fraudulent "use of reproductions, copies, counterfeits, or colorable imitations of registered marks." *CAE, Inc.,* 267 F.3d at 672 (citing 15 U.S.C. § 1127). A plaintiff may bring a Lanham Act claim under two theories of liability: (1) false representations regarding the origin, endorsement, or association of goods or services through the wrongful use of another's distinctive mark, name, trade dress, or other device ("false association"); and (2) false representations in advertising concerning the quality of services or goods ("false advertising"). *L.S. Heath & Son, Inc. v. AT & T Info. Sys., Inc.,* 9 F.3d 561, 575 (7th Cir. 1993); *see also* 15 U.S.C. § 1125(a)(1)(A), (B). Plaintiffs allege violations of both "false association" and "false advertising" under the Lanham Act.

### A.     False Association

Plaintiffs rely on the following paragraph of their Amended Complaint to support their Lanham Act claims:

> Defendants, by their unauthorized and unlawful uses of pirated copies of
> Plaintiffs' original Works on various goods (i.e., products and sales materials)
> which have been transported, distributed and sold in commerce and also by
> omitting to state on those goods that Defendants' counterfeits are *not* authorized
> copies of Plaintiffs' Works—that is, by failing to state that Defendants' copies are
> illegal uses – are falsely and misleadingly describing or representing to
> prospective purchasers and others that defendants' goods supposedly bear
> authorized designs, illustrations and other artwork of Plaintiff GREEN, which
> they do not; and when in fact Defendants' goods are pirated, unlawful copies of
> plaintiffs' Works.

(Am. Compl. ¶ 56) (emphasis in original). From Plaintiffs' allegations, it appears that they are alleging a "reverse passing off" claim, namely, that Defendants are misrepresenting Plaintiffs'

goods or services as their own. *See Bretford Mfg.,* 419 F.3d at 580-81 (Lanham Act condemns "false designations of origin").

Here, Defendants contend that Plaintiffs' allegations do not fit within the rubric of "reverse passing off" based on the Supreme Court's decision in *Dastar Corp. v. Twentieth Century Fox Film Corp.,* 539 U.S. 23, 123 S.Ct. 2041, 156 L.Ed.2d 18 (2003). In *Dastar*, one of the plaintiffs, Twentieth Century Fox ("Fox") produced a television series called "Crusade in Europe" based on a copyrighted book. *Id.* at 25-26. The series' copyright ended in 1977, leaving the series in the public domain. *See id.* at 26. In 1988, Fox reacquired the television rights to the book, including the exclusive right to distribute the television series on video. *Id.* Fox then granted the exclusive right to sell "Crusade in Europe" on video to SFM Entertainment ("SFM") and New Line Home Video ("New Line"). *Id.*

In 1995, defendant Dastar Corporation purchased tapes of the original television series – which were in the public domain – edited them and then sold them under the title "World War II Campaigns in Europe." *Id.* at 26- 27. Dastar sold the video set as its own product, making no reference to the Crusade television series, the New Line video set, or the book. *Id.* at 27. In 1998, Fox, New Line, and SFM filed a lawsuit against Dastar alleging that Dastar's sales of the Campaigns video without proper credit to the Crusade television series constituted "reverse passing off" in violation of Section 43(a) of the Lanham Act. *Id.* Specifically, the plaintiffs claimed that by marketing and selling the Campaigns video as its own, Dastar made a false designation of origin, false or misleading description of fact, or false or misleading representation of fact that was likely to cause confusion as to the origin of its product. *Id.* at 31 (citing 15 U.S.C. § 1125(a)(1)(A)). The *Dastar* Court explained that this claim "would

undoubtedly be sustained if Dastar had bought some of New Line's Crusade videotapes and merely repackaged them as its own. Dastar's alleged wrongdoing, however, is vastly different: It took a creative work in the public domain – the Crusade television series – copied it, made modifications (arguably minor), and produced its very own series of videotapes." *Id.*

After analyzing the phrase "origin of goods" as stated in the Lanham Act and reading it "in accordance with the Act's common-law foundations (which were not designed to protect originality or creativity), and in light of the copyright and patent laws (which were)," the *Dastar* Court concluded "that the phrase refers to the producer of the tangible goods that are offered for sale, and not to the author of any idea, concept, or communication embodied in those goods." *Id.* at 37. The Court reasoned that "[t]o hold otherwise would be akin to finding that § 43(a) created a species of perpetual patent and copyright, which Congress may not do." *Id.*

The Seventh Circuit explained the *Dastar* decision as follows:

> Dastar thus had the right (so far as the Lanham Act is concerned) to incorporate into its videos footage taken and edited by others, provided that it manufactured the finished product and did not mislead anyone about who should be held responsible for shortcomings. No one makes a product from scratch, with trees and iron ore entering one end of the plant and a finished consumer product emerging at the other. Ford's cars include Fram oil filters, Goodyear tires, Owens-Corning glass, Bose radios, Pennzoil lubricants, and many other constituents; buyers can see some of the other producers' marks (those on the radio and tires for example) but not others, such as the oil and transmission fluid.

*Bretford Mfg.*, 419 F.3d at 580. The *Bretford Mfg.* court thus instructs that the pertinent inquiry under *Dastar* is "whether the consumer knows who produced the finished product," even if "most of the product's economic value came from elsewhere." *Id.*

Here, Defendants contend that the retail costume products at issue – by their very nature – incorporate many people's work and that selling a hat or a t-shirt without naming every

designer who contributed to the product does not equate to a false statement of origin or source. In other words, Defendants argue that this is not a situation where Defendants took Plaintiffs' finished products and repackaged them as its own, instead Defendants contend that their products are an amalgam of many people's works. *See Dastar*, 539 U.S. at 31. Furthermore, as Defendants correctly assert, the Lanham Act does not protect originality or creativity, the Copyright Act does. *See id.* at 37.

At this procedural posture, the Court must view the facts as alleged in the Amended Complaint in a light most favorable to Plaintiffs. Here, the Court cannot determine as a matter of law that Defendants' products do not fit within the "reverse passing off" rubric as Defendants suggest. Instead, based on the facts as alleged, Plaintiffs have sufficiently pleaded a claim of "reverse passing off" by giving a short and plain statement that puts Defendants on notice of their claim and the grounds upon which it rests. *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 512, 122 S.Ct. 992, 152 L.Ed.2d 1 (2002) (citing *Conley*, 355 U.S. at 47). "This simplified notice pleading standard relies on liberal discovery rules and summary judgment motions to define disputed facts and issues and to dispose of unmeritorious claims." *Swierkiewicz*, 534 U.S. at 512. As such, the Court denies Defendants' motion to dismiss Plaintiffs' "reverse passing off" claim under Section 1125(a)(1)(A).

**B.    False Advertisement**

Plaintiffs also bring a claim of unfair competition under the "false advertising" prong of the Lanham Act. *See* 15 U.S.C. § 1125(a)(1)(B); *see, e.g., Johnny Blastoff, Inc. v. Los Angeles Rams Football Co.,* 188 F.3d 427, 438-39 (7th Cir. 1999); *Stanfield v. Osborne Indus., Inc.,* 52 F.3d 867, 873 (10th Cir. 1995) ("A false advertising claim implicates the Lanham Act's purpose

of preventing unfair competition."). Under this subsection, a plaintiff must show that (1) the defendant made a false statement of fact about its product or another's product in a commercial advertisement, (2) the statement has a tendency to deceive or actually deceived a substantial segment of its audience, (3) the deception is material, that is, it is likely to influence purchasing decisions, (4) the defendant caused its false statement to enter interstate commerce, and (5) the plaintiff has been or is likely to be injured as a result, either by direct diversion of sales from itself to defendant or by a loss of goodwill that is associated with its products. *Hot Wax, Inc. v. Turtle Wax,* 191 F.3d 813, 819 (7th Cir. 1999).

Defendants contend that Plaintiffs do not have standing to sue them under Section 1125(a)(1)(B) for unfair competition based on false advertising because they are not competitors. *See L.S. Heath & Son, Inc. v. AT & T Info. Sys., Inc.,* 9 F.3d 561, 575 (7th Cir. 1993). In *L.S. Health*, the Seventh Circuit held that a party bringing a lawsuit under the false advertising prong of Lanham Act must assert "a discernable competitive injury." *Id.* Thus, to have standing, a plaintiff must compete with the defendant in the same business. *See Chromium Indus., Inc. v. Mirror Polishing & Plating Co.,* 448 F.Supp. 544, 555 (N.D. Ill. 1978). For instance, in *L.S. Heath & Son*, the Seventh Circuit concluded that because the plaintiff, a candy company, was not in the computer business, it was not a competitor of the defendant AT&T, and thus the plaintiff did not have standing to raise its false advertising claim. *Id.* at 575. Similarly, in *Johnny Blastoff*, the Seventh Circuit concluded that because plaintiff corporation – which was in the business of creating and marketing cartoon characters – had never been part of the National Football League, the plaintiff could not assert a discernable competitive injury, and thus lacked standing. *Id.* at 437-39.

In their Amended Complaint, Plaintiffs allege that GGLDL is in the business of developing, acquiring, selling, licensing, and ***arranging*** the manufacture, distribution, marketing, and sale of a variety of copyrighted creative works.  (Am. Compl. ¶ 2.) (emphasis added) Plaintiff Green –  a professionally trained artist, designer, and illustrator – creates and markets original, copyrighted illustrations, designs, drawings, and other artwork for sale or license.  (*Id*. ¶ 4.)  Accord, Sternberg, Pet Frenzy, and Compass Marketing, on the other hand, actually produce, market, and sell clothing and accessories for pets.  (*Id*. ¶¶ 7-9.)  Buyseasons, Yankee Candle, and ICE Group are retailers in the business of purchasing, distributing, and reselling clothing and accessories for pets.  (*Id.* ¶¶ 12, 13, 20, 21, 28, 29.)  As such, Plaintiffs are not engaged in the same business as Defendants because Plaintiffs are not retailers or manufacturers of pet accessories and clothing.  Instead, Plaintiffs develop, acquire, and license "many kinds of commercial products."  (*Id.* at ¶ 4.)  Based on Plaintiffs' allegations, the parties are not engaged in the same business, and thus Plaintiffs cannot assert "a discernable competitive injury."  *See L.S. Heath & Son*, 9 F.3d at 575.  Accordingly, the Court grants Defendants' motion to dismiss Plaintiffs' false advertising claim with prejudice.

## II.     Breach of Contract Claim – Count III

In Count III of the Amended Complaint, Plaintiffs bring a common law breach of contract claim based on the Non-Disclosure and Confidentiality Agreement between Plaintiffs and Defendants Sternberg and Compass Marketing (and by successorship, Accord).[1]  (Am. Compl. ¶ 64.)  To prevail on a breach of contract claim under Illinois law, a plaintiff must

---

[1] Defendants' argument that Yankee Candle, ICE Group, and Buyseasons were improperly named as Defendants in Count III is without merit because Plaintiffs do not allege that these three entities are liable under their breach of contract claim in Count III.

establish: (1) the existence of a valid and enforceable contract; (2) performance under the terms of the contract; (3) that defendant breached the contract; and (4) that plaintiff suffered an injury as a result of defendant's breach. *Burrell v. City of Mattoon,* 378 F.3d 642, 651 (7th Cir. 2004); *Zirp-Burnham, LLC v. E. Terrell Assoc., Inc.*, 356 Ill.App.3d 590, 600, 292 Ill.Dec. 289, 826 N.E.2d 430 (Ill.App.Ct. 2005).

Plaintiffs allege that in the parties' Non-Disclosure and Confidentiality Agreement, Defendants Sternberg, Compass Marketing, and by successorship Accord, agreed to review Plaintiffs' works to determine their interest in the commercial exploitation of these works. (Am. Compl. ¶ 64(a)). Further, pursuant to the Agreement, Defendants agreed not to manufacture, sell, or otherwise use Plaintiffs' works. (*Id.* ¶ 64(b)). Plaintiffs allege that although they performed their obligations under the Agreement, Sternberg, Compass Marketing, and Accord failed to perform their obligations under the Agreement by misappropriating Plaintiffs' works and confidential information. (*Id.* ¶¶ 65, 66.) Plaintiffs also allege injury as a result of Defendants' breach. (*See id.* ¶ 69.) Under the liberal federal notice pleading standards, Plaintiffs have properly alleged a breach of contract claim under Illinois law putting Defendants on notice of their claim and the grounds upon which it rests. *See Conley,* 355 U.S. at 47.[2]

Nevertheless, Defendants contend that the Copyright Act preempts Plaintiffs' common law breach of contract claim. Section 301(a) of title 17 preempts any "'legal or equitable rights

---

[2] The Court rejects Defendants' argument that because Plaintiffs failed to distinguish Accord's actions from Sternberg's, Plaintiffs have failed to allege that Sternberg is liable in her individual capacity. In their Amended Complaint, Plaintiffs unequivocally allege that Sternberg failed to perform her obligations under the Agreement to which she was a party. (Am. Compl. ¶¶ 64, 66.) Under the liberal notice pleading standards, Plaintiffs' allegations put Sternberg on notice that she, as an individual – and not a corporate officer or director – is being sued for breach of contract.

[under state law] that are equivalent to any of the exclusive rights within the general scope of copyright as specified by section 106 in works of authorship that are fixed in a tangible medium of expression and come within the subject matter of copyright as specified by sections 102 and 103.'" *ProCD, Inc. v. Zeidenberg,* 86 F.3d 1447, 1453 (7th Cir. 1996). The *ProCD* court explained the general differences between copyright claims and breach of contract claims:

> Rights "equivalent to any of the exclusive rights within the general scope of copyright" are rights established by law – rights that restrict the options of persons who are strangers to the author. Copyright law forbids duplication, public performance, and so on, unless the person wishing to copy or perform the work gets permission; silence means a ban on copying. A copyright is a right against the world. Contracts, by contrast, generally affect only their parties; strangers may do as they please, so contracts do not create "exclusive rights."

*Id.* at 1454.

By entering into the Non-Disclosure and Confidentiality Agreement, the parties entered into a private, contractual transaction concerning intellectual property. As the *ProCD* decision instructs, preemption does not necessarily force courts to interfere in contractual rights that are bargained for by the parties. *Id.* ("courts usually read preemption clauses to leave private contracts unaffected"). Moreover, Plaintiffs allege that Defendants breached their duty of confidentiality as provided by the Agreement because Defendants disclosed Plaintiffs' copyrighted works, as well as other confidential information. (Am. Compl. ¶ 66(a).) A claim that Defendants breached a contractual duty of confidentiality is not the equivalent of any of the exclusive rights copyright holders have under the Copyright Act. *See Toney v. L'Oreal U.S.A., Inc.*, 406 F.3d 905, 909 (7th Cir. 2005) (copyright holders have five exclusive rights, including reproduction, publication, adaptation, performance, and display); *see, e.g., Lennon v. Seaman,* 63 F.Supp.2d 428, 437-38 (S.D.N.Y. 1999) (breach of confidentiality agreement not preempted

because it involved rights that are not equivalent to those under Copyright Act). In short, Plaintiffs' breach of contract claim is qualitatively different than the rights under the Act, and thus their breach of contract claim is not preempted.

As the Seventh Circuit has explained, Section 301(a) of the Copyright Act "prevents states from substituting their own regulatory systems for those of the national government," but "does not itself interfere with private transactions in intellectual property." *ProCD*, 86 F.3d at 1455. The Court thus denies Defendants' motion to dismiss Plaintiff's breach of contract claim.

## CONCLUSION

For these reasons, the Court grants in part and denies in part Defendants' motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6).

**Dated:** October 5, 2006

**ENTERED**

**AMY J. ST EVE**
**United States District Court Judge**